UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KIMBERLY SUE J.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 6:25-cv-06253 (JGW)

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, (Docs. 7, 11), as well as Plaintiff's reply brief, (Doc. 12). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 7) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 11) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I. RELEVANT BACKGROUND

### A. Procedural Background

On December 28, 2017, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, as well as an application for supplemental security income, alleging an onset date of December 16, 2016. (Tr. 157, 168, 245-51,

252-58.) Plaintiff's claim was denied initially. (Tr. 179, 180.) She then timely requested a hearing before an Administrative Law Judge (ALJ) and appeared with counsel for a video hearing before ALJ Brian Battles on September 20, 2019. (Tr. 35-82.) On March 5, 2020, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 13-34.) The Appeals Council denied her request for review, and Plaintiff appealed to the Western District of New York. (Tr. 1-7.) Thereafter, the parties stipulated to a remand of the matter. (Tr. 840-42.)

On September 1, 2022, ALJ Battles held a telephonic hearing, where Plaintiff appeared with counsel. (Tr. 704-66.) On October 12, 2022, ALJ Battles issued a partially favorable decision, finding that Plaintiff was not disabled prior to July 26, 2022 but became disabled on that date due to her age changing. (Tr. 673-703.) Plaintiff again appealed to the Western District of New York.

The Western District of New York remanded the case, (Tr. 1522-34), and ALJ Brian Kane held another telephonic hearing on January 24, 2025, (Tr. 1459-89). He issued a decision finding Plaintiff was not disabled prior to July 26, 2022. (Tr. 1427-58.) Plaintiff then timely appealed to this Court.

### B. Factual Background[1]

Plaintiff was born on July 27, 1972, and alleged disability beginning on December 16, 2016. (Tr. 157.) Plaintiff has a GED and a cosmetology license. (Tr. 719.) Her disabling conditions were initially alleged to include depression, anxiety, fibromyalgia, hypothyroidism, degenerative disc disease, osteoarthritis, nerve condition from neck to tailbone, and foot disability. (Tr. 157-58.)

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ. Other facts will be developed throughout the opinion as relevant to the Court's analysis.

During the most recent hearing, Plaintiff explained why she was unable to work during the period in question, which was prior to July 26, 2022. Plaintiff indicated that her medications made her dizzy, nauseous, and tired. (Tr. 1486.) She identified difficulty looking at computers or even anything for more than a few minutes. (*Id.*) She could not tolerate a lot of people talking at once or loud noises. (*Id.*) Standing was also difficult. (*Id.*)

Plaintiff explained that, during the relevant period, she lived with her son, and he assisted her with many daily tasks, such as cleaning up after she cooked, carrying groceries and dog food into the house, helping her clean and do laundry. (Tr. 1487.) She noted that she had difficulty doing those things consistently, and so he helped. (*See id.*)

A medical expert, Dr. Krishnamurthi, also testified at the hearing before ALJ Kane. He testified that Plaintiff had degenerative joint disease of the cervical spine, fibromyalgia, hypothyroidism, degenerative changes of the lumbar spine, and chronic pain syndrome, as supported by the medical record. (Tr. 1474.) He further explained that, in his opinion, none of Plaintiff's impairments meet or exceed any listing. (Tr. 1475.) He opined that she would be able to lift frequently ten pounds, occasionally twenty pounds, as well as sit for six hours in an eight-hour day and stand and walk a total of six hours in an eight-hour period. (Tr. 1476.) He also found that Plaintiff could frequently use her upper extremities, including reaching, handling, fingering, feeling, and grasping. (*Id.*) But she could not climb on ladders, scaffolds, ropes, or stairs. (*Id.*) Neither could she bend. (*Id.*) She could occasionally crawl, crouch, kneel, balance. (*Id.*) He further limited her to no contact with ice or dangerous machinery. (*Id.*)

### C. ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2025. (Tr. 1432.)

2. The claimant has not engaged in substantial gainful activity since December 16, 2016, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.). (Tr. 1432.)

3. The claimant has the following severe impairments: degenerative disc disease; fibromyalgia; degenerative joint disease, status-post left second-toe fracture; obesity and anxiety (20 CFR 404.1520(c) and 416.920(c)). (Tr. 1433.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 1434.)

5. For the period between December 16, 2016 through July 26, 2022, and after careful consideration of the entire record, I find that the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can frequently push and pull and operate hand controls with the bilateral upper extremities. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant can occasionally climb ramps and stairs and can never climb ladders, ropes, or scaffolds. The claimant can frequently handle, finger, and reach with the bilateral upper extremities. The claimant can never work in an area that has concentrated exposure to extreme heat, cold, or humidity. The claimant can never work in hazardous environments, such as at unprotected heights or around moving mechanical parts. The claimant can understand, remember, and carry out simple instructions in the workplace. (Tr. 1437.)

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). (Tr. 1445.)

7. The claimant was born on July 27, 1972 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963). (Tr. 1446.)

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964). (Tr. 1446.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 1446.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a). (Tr. 1446.)

11. The claimant was not been under a disability, as defined in the Social Security Act, from December 16, 2016 through July 26, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). (Tr. 1447.)

## II. LEGAL STANDARD

### A. Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by

evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

**B. Standard to Determine Disability**

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers

in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III. ANALYSIS

Plaintiff argues that the ALJ erred in finding the September 2020 opinions from Dr. Garneau to be unpersuasive. (Doc. 7-1 at 15.) She contends that the ALJ failed to properly evaluate the supportability and consistency factors and also erroneously relied on selectively chosen or mischaracterized evidence. (*See id.* at 15-16.)

### A. Dr. Garneau's September 2020 Opinions

Plaintiff's challenge focuses on the ALJ's evaluation of three opinions submitted by Dr. Garneau, Plaintiff's treating primary care physician, each dated September 24, 2020. (*See* Tr. 1413-18, 1419-23, 1388-91.) First, Dr. Garneau issued an opinion for the Monroe County Department of Human Services, which the ALJ summarized as follows:

> John Garneau, M.D., opined in September 2020 that the claimant could occasionally walk, stand, climb ramps and stairs, climb ladders or scaffolds, stand, sit, stoop, kneel, crouch, crawl, push, pull, bend, see, hear, and speak; that the claimant could lift and carry up to 25 pounds; that the claimant was not limited in her ability to operate a motor vehicle; that the claimant could occasionally be exposed to unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes, pulmonary irritants, and extreme cold; that the claimant could never be exposed to extreme heat or vibrations; that the claimant's ability to use her bilateral hands varied by day but depending on the day she could never or occasionally reach, handle, finger, feel, push, or pull with her bilateral hands; that she could continuously operate foot controls with the right foot and occasionally to frequently operate foot controls with the left foot; that she could not walk a block at a reasonable pace on rough or uneven surfaces; and that she could use public transportation. Dr. Garneau also opined at the same time that the claimant was permanently disabled (Exhibit B27F).

(Tr. 1444) (citing Tr. 1385-91.)

Dr. Garneau also issued an opinion set forth on a Fibromyalgia, Arthritis, and Immunological RFC Questionnaire and one on a Physical RFC Questionnaire, which the ALJ summarized as well:

> John Garneau, M.D., also opined in September 2020 that the claimant's symptoms would constantly be severe enough to interfere with their attention and concentration needed to perform even simple work tasks; that she was incapable of even a low stress jobs; that she could walk two to three city blocks without rest or severe pain; that she could sit for 10 minutes at one time and less than two hours in a workday; that she could stand for 45 minutes at one time and less than two hours in a workday; that she needed to be able to shift positions at will, sometimes use a cane or assistive device, and take unscheduled breaks; that she could rarely to occasionally lift 20 pounds; that she could never stoop, bend, or crouch; that she could rarely twist and climb ladders or stairs; that she had significant limitations in repetitive reaching, handling, or fingering; and that she would be absent more than four days per month. Dr. Garneau also opined that the claimant had a moderate limitation in activities of daily living, a marked limitation in maintaining social functioning, and an extreme limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace. Dr. Garneau further opined that these limitations had been in place on or about since 2007 (Exhibit B31F).

(Tr. 1444-45) (citing Tr. 1412-23.)

**B. The ALJ's Analysis**

The ALJ found these opinions not to be persuasive, expressly noting that an opinion on the issue of a claimant being disabled is reserved to the Commissioner of Social Security. (Tr. 1445.) He further found the opinions to be internally inconsistent because "they provided different weights that the claimant's [sic] was able to carry, different limitations in her ability to perform postural activities, different degrees of manipulative limitations, and opined both that the claimant did have environmental limitations and then not providing environmental limitations." (*Id.*)

The ALJ further found that the opined limitations were not well-supported because they noted "primarily the claimant's diagnoses and symptoms, with very few objective

findings." (*Id.*) He also concluded that the "degree of limitation opined in both opinions provided by Dr. Garneau was not consistent with the longitudinal record," pointing to:

> [Plaintiff's] diagnostic imaging showing degenerative changes in her lumbar and cervical spine; her left toe surgery; her normal and abnormal physical examination findings; her treatment throughout the period at issue; her positive response to medication and physical therapy; her activities of daily living; and her subjective complaints are consistent with a limitation to sedentary work with the above postural, manipulative, and environmental limitations.

(*Id.*)[2]

### C. The Court's Analysis

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

[2] The Court notes that the ALJ also analyzed the mental limitations opined by Dr. Garneau, but because Plaintiff did not challenge the ALJ's analysis of this portion of his opinion, the Court does not set it forth here.

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

Furthermore, genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support the ALJ's conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995).

Having carefully reviewed the record, as well as the ALJ's evaluation of Dr. Garneau's opinions, the Court does not find Plaintiff's challenges to be well-taken. The

ALJ expressly addressed supportability, finding Dr. Garneau's opinions not to be well-supported because they relied upon "primarily the claimant's diagnoses and symptoms, with very few objective findings." (Tr. 1445.) While Plaintiff contends that the ALJ failed to compare these opinions to Dr. Garneau's treatment records and objective testing, and points to several entries she contends supports the limitations, the Court notes that many of Plaintiff's identified notations refer to Plaintiff's reports of pain—a subjective symptom—not additional objective evidence. (*See* Doc. 7-1 at 21-22) (citing Tr. 484, 500-01, 503, 1229, 1240.) This is not inconsistent with the ALJ's statement. Moreover, even if the ALJ had recited such records in his analysis, they, too, would have primarily included symptoms, rather than objective evidence. While Plaintiff did identify some objective testing evidence, this is not inconsistent with the ALJ's supportability analysis, as he specifically noted that the opinion was supported with "very few objective findings." (*See* Tr. 1445.)

The ALJ also directly addressed the consistency of Dr. Garneau's opinions with the whole of the record, finding them inconsistent due to diagnostic imaging, physical examination, treatment, including her positive response to medication and physical therapy, her activities of daily living, and subjective complaints. (*See* Tr. 1445.)

The Court finds this analysis adequate. While Plaintiff argues that diagnostic imaging is not critical because Plaintiff's primary impairment was fibromyalgia, the Court notes that the imaging is still relevant to Plaintiff's degenerative disc disease impairment. This imaging reflects generally mild to moderate abnormalities and changes. (*See* Tr. 393, 961-62, 1117-118.) It was proper for the ALJ to compare Dr. Garneau's significant restrictions to this imaging and conclude it was inconsistent.

Similarly, it was proper for the ALJ to consider Plaintiff's activities of daily living with Dr. Garneau's recommended limitations, again finding them inconsistent. (*See* Tr. 1455.) While Plaintiff contends that the ALJ did not elaborate on the activities upon which he relied, the Court notes that the ALJ detailed the activities of daily living earlier in his decision, (*see* Tr. 1435-36), which was sufficient. It is well-settled that it is appropriate for an ALJ to consider activities of daily living in evaluating a claimant's RFC. *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (recognizing that "[t]he ALJ also relied on Cichocki's Daily Activities Questionnaire on which she indicated that she performed numerous daily tasks, such as walking her dogs and cleaning her house, that are consistent with a residual capacity to perform light work."). Given Plaintiff's reports that she regularly attended church, went food shopping, worked as a hairdresser, prepared meals, did laundry, cleaned, shopped, and cared for her personal needs, (*see* Tr. 292, 349-50, 418, 425-26), it was reasonable for the ALJ to find Dr. Garneau's restrictions inconsistent with such activities. *See Cichocki*, 729 F.3d at 178.

While Plaintiff argues that the ALJ mischaracterized or exaggerated the differences between the opinions, the Court disagrees. The crux of Plaintiff's argument is that, while there were slight differences among the opinions, these differences were "largely irrelevant to the decision." (*See* Doc. 7-1 at 21.) However, *there were* differences between the opinions based on Dr. Garneau's response to the pre-made form. For example, Dr. Garneau opined on one form that Plaintiff could rarely or occasionally lift and carry 20 pounds. (*See* Tr. 1416, 1421.) Yet, in another form, he opined that Plaintiff could occasionally lift/carry 20-25 pounds. (*See* Tr. 1389.) While Plaintiff complains that the difference between these ranges was likely due to the formatting of the form, the Court

notes that Dr. Garneau wrote in “20-25” under the column requesting weight. (*See* Tr. 1389.) Moreover, Dr. Garneau did not assess any manipulative limitations in one opinion, (*see* Tr. 1422), but he assessed unspecified “significant limitations” on the other, (*see* Tr. 1416). Importantly, these differences were in response to the same prompt on the different forms. (*Compare* Tr. 1416 *with* Tr. 1422.) Finally, in one opinion, Dr. Garneau assessed environmental limitations, (*see* Tr. 1389-90), and did not include any such limitations on the other, (*see* Tr. 1422). Thus, Plaintiff’s argument that the ALJ mischaracterized the evidence fails. To the contrary, the ALJ noted multiple differences between the opinions that, at a minimum, affected Dr. Garneau’s credibility.

While Plaintiff may identify certain facts that she contends supports a finding of disability, at most, she identifies a conflict in the evidence. It is well settled that conflicts within the evidence are to be resolved by the ALJ, *see Veino*, 312 F.3d at 588, and once resolved by the ALJ, they cannot be overturned by this Court unless “a reasonable factfinder would *have to conclude otherwise*.” *Brault v. Soc. Sec. Admin, Com’r*, 683 F.3d 443, 448 (2d 2012) (emphasis in original) (citation omitted). Thus, the Court is plainly prohibited from re-weighing the evidence, which is what Plaintiff requests. *See Krull v. Colvin*, 669 F. App’x 31, 32 (2d Cir. 2016) (“Krull’s disagreement is with the ALJ’s weighing of the evidence, but the deferential standard of review prevents us from reweighing it.”). Simply put, Plaintiff’s disagreement with the ALJ’s resolution of conflicting evidence is not grounds for remand. *See David C. v. Comm’r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm’r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y.

June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination.").

In sum, the Court finds there is "more than a mere scintilla" of evidence supporting the ALJ's RFC, including his resolution of conflicting evidence, and so the sufficient evidence standard has been satisfied. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (recognizing that "substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") Plaintiff has simply not shown that "the record requires a reasonable factfinder to reach a different result." *See Spottswood v. Kijakazi*, No. 23-54-cv, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (summary order).

Accordingly, the Court finds no error in the ALJ's evaluation of Dr. Garneau's opinion.

## IV. CONCLUSION

Based on the foregoing, the Court finds no basis for remand. **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 7) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 11) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: September 28, 2026
Rochester, New York

J. Gregory Wehrman J.G.W.
HON. J. Gregory Wehrman
United States Magistrate Judge